STATE of Minnesota, Respondent,

v.

Daryl Duane ALT, Appellant.

No. C7–94–1334.

Court of Appeals of Minnesota.

April 18, 1995.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Raymond F. Schmitz, Olmsted County Atty., James S. Martinson, Asst. County Atty., Rochester, for respondent.

John M. Stuart, State Public Defender, Marie L. Wolf, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by NORTON, P.J., SCHUMACHER and MANSUR,* JJ.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 10.

## OPINION

NORTON, Judge.

This appeal is from a judgment of conviction for first degree criminal sexual conduct and attempted first degree murder. Minn. Stat. §§ 609.17, .185, .342, subd. 1(c) (1990). The trial court sentenced appellant Daryl Alt to the statutory maximum for first degree criminal sexual conduct. Alt contends the court abused its discretion in admitting *Spreigl* evidence and in sentencing him for the wrong conviction. We affirm.

## FACTS

Appellant Daryl Alt was charged with the August 15, 1990, sexual assault and attempted strangulation of 15–year–old J.S. The trial was delayed for three-and-one-half years by two pretrial appeals. *See State v. Alt,* 469 N.W.2d 732 (Minn.App.1991) (affirming suppression of evidence seized under search warrant); *State v. Alt,* 504 N.W.2d 38 (Minn.App.1993) (affirming in part limitations on admission of DNA evidence), *aff'd as modified,* 505 N.W.2d 72 (Minn.1993). The jury found Alt guilty of first degree assault, attempted first degree murder, and first degree criminal sexual conduct.

At trial, J.S. testified that while she was sitting on the front steps at her sister's apartment, a man she described as being somewhat taller than she, "real skinny," and having sandy blond hair walked up to her, sat down and started a conversation. He asked her to go to a party with him, and gave her his wallet to convince her to go. She testified that she remembered his first name began with "D." J.S. got into the man's pickup truck. At trial she gave a brief description of the interior of the truck. Instead of driving her to the party, the man drove to two deserted locations, ultimately raping J.S. after threatening to kill her. He left her in a cornfield after attempting to strangle her.

As a result of the assault, J.S. was hospitalized for six days. J.S. was shown a photo display while she was in the hospital. Although she did not recall seeing the display, she conceded at trial that Alt's picture was in it and that she had not identified any of the photos as that of her attacker. J.S. testified that when she viewed the lineup, her eyes were still swollen and she couldn't see very well.

J.S. was shown Alt's wallet at trial and made a positive identification of it. She also made a positive in-court identification of Alt as her attacker.

The state presented DNA evidence at trial showing a "match" between Alt's DNA and that of the specimen taken from the victim's body and clothing. The state, however, was limited in the way it could present this evidence by the law in effect at the time, which excluded any combined statistical probability evidence and also limited the expert nonstatistical opinion testimony on the significance of the "match." *See Alt,* 504 N.W.2d at 50–53.

The state moved for the admission, as *Spreigl* evidence, of a 1983 sexual assault to which Alt pleaded guilty and was sentenced in 1984. The state offered to prove this offense either by means of the criminal complaint along with a transcript of the victim's statement, or by a summary of the facts of the offense drafted by the state. Alt opposed the motion, arguing that the state's evidence of identity was not weak. The trial court, however, ruled that the state's evidence of identity was weak and that the *Spreigl* evidence would be admissible. The court allowed the state to read to the jury the probable cause portion of the complaint and the victim's statement.

At sentencing, the state moved for an upward departure on both the attempted first degree murder and the first degree criminal sexual conduct, and for consecutive sentencing. The trial court, however, ruled that Alt could not be sentenced on both offenses because the two offenses were part of a single behavioral incident. Alt argued that he should be sentenced on the attempted first degree murder because that was the more serious offense. The court concluded that the criminal sexual conduct was the more serious offense and imposed a 300–month

sentence, the statutory maximum, for that offense. The court ordered Alt to pay restitution to J.S. for her lost wages and medical expenses.

## ISSUES

I. Did the trial court abuse its discretion in admitting *Spreigl* evidence?

II. Did the trial court err in sentencing on the first degree criminal sexual conduct rather than on the attempted first degree murder conviction?

## ANALYSIS

### I.

Alt argues that the admission of the 1983 *Spreigl* evidence was an abuse of discretion because the state's case on identity was not weak. He also contends the trial court should not have allowed the state to prove the *Spreigl* offense by means of hearsay statements in the complaint and by the victim's statement to police. The trial court's ruling on the admissibility of *Spreigl* evidence will not be reversed absent an abuse of discretion. *State v. Johnson,* 463 N.W.2d 527, 534 (Minn.1990).

In order to admit *Spreigl* evidence, the trial court must find that it is relevant and material to the state's case, that the state has a need for the evidence, that the defendant's participation in the offense is shown by clear and convincing evidence, and that the probative value of the evidence is not outweighed by its potential for unfair prejudice. *See, e.g., State v. DeWald,* 464 N.W.2d 500, 503–04 (Minn.1991).

The trial court did not abuse its discretion in concluding that the state's evidence of identity was weak without the *Spreigl* evidence. J.S.'s in-court identification was weakened by her failure to pick Alt's photo in the photo display. Although the state's blood-type testing and DNA testing pointed to Alt as the perpetrator, the state was limited in the statistical probability evidence that it could present at the time it tried this case. *See Alt,* 504 N.W.2d at 53 (noting that combined statistical probability of a match at all loci was not admissible); *cf. State v. Bloom,* 516 N.W.2d 159, 167 (Minn.1994) (removing former limitation on combined statistical probability evidence).

There were also discrepancies between J.S.'s descriptions of both the truck and Alt and their actual characteristics. In addition, Alt testified as to his whereabouts the evening of the crime. Although he did not offer a complete alibi, he testified to a series of events that the defense argued would have made it impossible for him to have committed the offense. *See generally DeWald,* 464 N.W.2d at 504 (where identity is in issue and defendant presents an alibi, state has a right to bolster its case with *Spreigl* evidence). Based on this record, we conclude the state showed a need for the *Spreigl* evidence.

Alt contends that the trial court abused its discretion in allowing the state to prove the *Spreigl* offense through the complaint and the victim's statement to police. The supreme court, however, approved the presentation of a *Spreigl* offense by similar means in *State v. Crocker,* 409 N.W.2d 840, 843–44 (Minn.1987). This evidence does not create a hearsay problem because a "judgment of previous conviction" is recognized as a hearsay exception in Minn.R.Evid. 803(22). We are not persuaded by the Seventh Circuit case that Alt presents with a ruling contrary to *Crocker. See Bell v. City of Milwaukee,* 746 F.2d 1205, 1273 n. 81 (7th Cir.1984) (Fed.R.Evid. 803(22) does not extend to statements of witnesses incorporated into criminal complaint). As the state points out, *Crocker* is the controlling authority in this jurisdiction, not *Bell.*

### II.

The trial court agreed with Alt's argument that the first degree criminal sexual conduct and the attempted first degree murder were part of the same behavioral incident. *See State v. Norregaard,* 384 N.W.2d 449, 449 (Minn.1986) (Minn.Stat. § 609.035 prohibits multiple sentences for offenses committed within one behavioral incident). The court sentenced Alt only on the first degree criminal sexual conduct conviction. Alt argues that the court erred be-

cause attempted first degree murder is the more serious offense.

If a defendant's conduct "constitutes more than one offense," he may be sentenced on only one of the convictions. Minn.Stat. § 609.035 (1992). The statute does not dictate which of the convictions the court should use for sentencing. Dean Pirsig's comment, however, states:

> The intent of the section is to meet these [double jeopardy] objections by limiting the sentence to the maximum permitted for the most serious crime committed.

Minn.Stat.Ann. § 609.035 cmt. (West 1987). The Advisory Committee made a somewhat broader statement that the court may impose "the highest sentence which any one of [the convictions] carries." *Id.*, advisory committee cmt. We conclude that the statute was not intended to limit the trial court's discretion in choosing the conviction on which to impose sentence.

The purpose of Minn.Stat. § 609.035 is to protect the defendant from multiple punishment. *State v. Prudhomme*, 303 Minn. 376, 378, 228 N.W.2d 243, 245 (1975).

> The policy underlying this objective appears to be that, where the statute is applicable and defendant is convicted of multiple offenses, as a practical matter a single sentence will necessarily take into account all violations, *and imposing up to the maximum punishment for the most serious offense* will include punishment for all offenses.

*State v. Johnson*, 273 Minn. 394, 399, 141 N.W.2d 517, 522 (1966) (emphasis added). A defendant is fully protected under the statute when the court imposes a single sentence against him. The policy of the statute encompasses an assumption that the trial court will sentence on the most serious offense. The statute implies no further protection when, as here, what is by some measurement arguably the "more serious" offense carries the less severe potential punishment.

Alt cites two cases in which attempted murder was considered more serious than other offenses committed in the same behavioral incident. *See State v. Hawkins*, 511 N.W.2d 9, 13 (Minn.1994) (more serious than aggravated robbery); *State v. Martinson*, 422 N.W.2d 282, 283 (Minn.App.1988) (more serious than arson). In neither *Hawkins* nor *Martinson*, however, was there any discussion of how to determine which offense was more serious. Neither case even states the presumptive sentences or statutory maximums of the different offenses.

No cases since *Johnson*, 273 Minn. at 399, 141 N.W.2d at 522, have limited the trial court's discretion in choosing which offense is the "most serious." Neither the statute itself nor the case law construing it implies that such a limitation should exist.

### *Pro se* Brief

■ Alt has filed a *pro se* supplemental brief reiterating his attorney's challenge to the *Spreigl* evidence, claiming the evidence was insufficient to convict, and challenging the restitution order. Alt's challenge to the sufficiency of the evidence concerns the weight to be given the evidence, particularly J.S.'s identification of him. We defer to the jury's ability to weigh the credibility of the witnesses. *State v. Bias*, 419 N.W.2d 480, 484 (Minn.1988).

■ The trial court awarded restitution of $2,465.55 paid to J.S. for lost wages and for medical expenses. J.S. submitted a claim for restitution, with attached medical bills, and the defense stipulated to $410 in lost wages. Alt's challenge to the restitution order lacks any factual basis. At sentencing, defense counsel argued only that the award should not include expenses for the second hospital stay, caused by J.S. at one point ignoring medical advice. Finding this expense a result of the criminal offense was within the trial court's discretion. *See State v. O'Brien*, 459 N.W.2d 131, 133 (Minn.App.1990) (trial court has broad discretion to order reasonable restitution).

### DECISION

The trial court did not abuse its discretion in admitting *Spreigl* evidence or in awarding restitution. The court did not err in sentencing appellant for the first degree criminal sexual conduct conviction.

**Affirmed.**