STATE of Minnesota, Appellant,

v.

Stephen Daniel ANGOTTI, Respondent.

No. C7–01–642.

Court of Appeals of Minnesota.

Sept. 11, 2001.

Mike Hatch, Attorney General, St. Paul; and James C. Backstrom, Dakota County Attorney, Kaarin Long, Assistant Dakota County Attorney, Hastings, for appellant.

Mark D. Nyvold, Richard J. Malacko, St. Paul, for respondent.

Considered and decided by RANDALL, Presiding Judge, HANSON, Judge, and LINDBERG, Judge.*

## OPINION

LINDBERG, Judge.

The state appeals the district court's order for a stay of adjudication of respondent Stephen Daniel Angotti's conviction for wrongfully obtaining public assistance. Because the district court has abused its discretion by failing to articulate adequate reasons to support its stay of adjudication order, we reverse and remand.

## FACTS

Respondent Stephen Daniel Angotti received public assistance from the Minnesota Family Investment Program and food stamps from May 1998 through March 2000. Angotti owns a cleaning company, which received its income through a contract with Huber Commercial Services. Angotti failed to report all of his income to Dakota County even though he was informed that he had to report all forms of income and that failure to due so was a crime. The county calculated that it had overpaid Angotti approximately $11,720.

Angotti was charged with four counts of theft by wrongfully obtaining public assistance, Minn.Stat. §§ 256.98, 393.07 (2000). Angotti pleaded guilty to count two for wrongfully obtaining public assistance from November 1998 to April 1999. Pursuant to the plea bargain, the remaining charges were dropped and Angotti agreed to make restitution of $11,720. The state indicated that it would seek a felony presumptive sentence of twelve months and one day stayed incarceration.

The district court ordered completion of a pre-sentence investigation report. The PSI recommended stayed imposition of a sentence for up to five years, with certain conditions. The PSI also indicated that Angotti's wife, also charged with wrongfully obtaining public assistance, was allowed to enter a diversion program.

At the sentencing hearing, Angotti told the district court that his lack of understanding about the reporting requirements had led to his underreporting of income. Angotti stated that he thought that the money he received from Huber Commercial Services used to pay his employees was not considered income. He admitted that he had poor record-keeping practices. In addition, Angotti stated that a felony conviction would make it impossible for his company to obtain cleaning contracts because he would have to undergo criminal-background checks.

The district court, sua sponte, ordered a stay of adjudication and placed Angotti on probation for up to five years. The court stated:

> In view of the circumstances and overall record of this case, this Court feels that perhaps the state may have had an uphill battle in proving the elements, especially the element of intent, beyond a reasonable doubt had this case gone to trial. However, Mr. Angotti has admitted wrongdoing and there should be consequence[s].
>
> Under the unusual circumstances and confusion of this particular case and the facts related to this Court, I am going to stay adjudication of sentence in this matter, place you on probation for a period of zero to five years.

The state appeals the district court's order for a stay of adjudication.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## ISSUE

Did the district court clearly abuse its discretion at sentencing by deferring adjudication of conviction?

## ANALYSIS

■ Where a defendant has been found guilty, by his plea, the district court has the "inherent judicial power" to stay the ultimate adjudication of guilt. *State v. Foss*, 556 N.W.2d 540, 541 (Minn.1996); *State v. Krotzer*, 548 N.W.2d 252, 254–55 (Minn.1996). "Stays are the '*final disposition* of a criminal case.'" *State v. Lattimer*, 624 N.W.2d 284, 286 (Minn.App.2001) (quoting *Krotzer*, 548 N.W.2d at 254) (emphasis added), *review denied* (Minn. May 15, 2001). "[W]ith a stay of adjudication, the district court has the power to impose terms and conditions of probation," including incarceration for up to 12 months. *Id.* The stay of adjudication, as applied in this case, is a sentencing function of the district court. *Id.* at 287, 290. As noted in the concurring opinion in *Lattimer*, "[n]either *Krotzer* nor *Foss*, nor their progeny, make evident the appropriate standard of review for the appellate courts." *Id* at 291. As sentencing guidelines require adequate written reasons for departing from the guidelines for durational and dispositional departures, there is also need for adequate reasons for stays of adjudication. *See* Minn. Sent. Guidelines II.D. The need for a stay of adjudication, a sentencing function, must be substantial and compelling, as in *Lattimer*. *Id.* We will reverse a district court's decision regarding sentencing only for "a clear abuse of discretion." *Lattimer*, 624 N.W.2d at 290 (citing *State v. Lundberg*, 575 N.W.2d 589, 591 (Minn. App.1998), *review denied* (Minn. May 20, 1998)).

■ The district court must provide reasons, in writing or on the record, supporting an order for a stay of adjudication.

*State v. Ohrt*, 619 N.W.2d 790, 792 (Minn. App.2000); *see, e.g., Lattimer*, 624 N.W.2d at 290 (stating district court considered the offense, the defendant's conduct, the recommendations of the victim and the victim's family, and the pre-sentence investigation report). The district court did not clearly articulate any adequate reasons to support its sentencing order.

■ The district court stated that "perhaps the state may have had an uphill battle in proving the elements, especially the element of intent." The issue of intent, stemming from Angotti's "confusion" about common business practices and the rules defining reportable income, is irrelevant, however. The supreme court stated that a stay of adjudication should be employed only for injustices "resulting from the prosecutor's clear abuse of discretion in the exercise of the charging function." *State v. Foss*, 556 N.W.2d 540, 541 (Minn. 1996). This statement has been interpreted to mean that the court may assess whether "the state had sufficient evidence to prove that an offense had occurred." *See Lattimer*, 624 N.W.2d at 291 (Crippen, J., concurring).

> But the weight of evidence supporting a charge is largely beside the point when considering the cause for staying an adjudication, as it no doubt was in *Krotzer* and the subsequent cases that address the same issue. What was at issue in those cases was whether the trial court had cause to strongly question whether the prosecution erred in its insistence that a conviction be recorded, perhaps when it brought the charges * * * but more commonly when the case advanced to the point where an adjudication and disposition might occur.

*Id.*

In this case, unlike *Lattimer*, the record does not appear to establish that a convic-

tion should be deferred. In *Lattimer,* the defendant had formed an unusually strong bond with the victim, and if the defendant lost his driver's license as a result of having a felony conviction "the victim would [have lost] his connection to the community, and the victim's mother would [have lost] her support." 624 N.W.2d at 290; *see, e.g., Krotzer,* 548 N.W.2d at 254 (stating district court's determination that defendant's situation "warranted unusual judicial measures" was supported "by the special circumstances" of the case).

■ In this case, the record does not show that special circumstances exist making a stay of adjudication necessary to the furtherance of justice. *See Krotzer,* 548 N.W.2d at 255. Neither party requested a stay of adjudication, and the PSI recommended a stay of imposition. The fact that the defendant could lose his business because he would not be able to obtain contracts is a collateral consequence that does not support a stay of adjudication. *State v. Twiss,* 570 N.W.2d 487, 487 (Minn. 1997); *State v. Scaife,* 608 N.W.2d 163, 164 (Minn.App.2000), *review denied* (Minn. May 16, 2000). The record does not show that the district court considered any other factors to support its decision.

We are mindful of the problems inherent in crowded dockets and the potential for abuse of the stay of adjudication process, as stated in the dissents in *Krotzer* and *Foss. Krotzer,* 548 N.W.2d at 256 (Coyne, J., dissenting); *State v. Foss,* 554 N.W.2d 82, 84–85 (Minn.App.1996) (Harten, J., dissenting). The standards set out herein will keep in check some of the potential abuse of the separation-of-powers argument articulated in *Krotzer* and *Foss.*

### DECISION

The district court clearly abused its discretion in deferring adjudication of a conviction without providing adequate reasons to support that decision. We remand to the district court to provide adequate reasons supporting a stay of adjudication or to impose a sentence under the sentencing guidelines.

**Reversed and remanded.**

RANDALL, Judge (dissenting).

I respectfully dissent. The majority correctly notes that we reverse district court decisions regarding sentencing only for "a clear abuse of discretion." *State v. Lattimer,* 624 N.W.2d 284, 290 (Minn.App. 2001) (citation omitted), *review denied* (May 15, 2001). I do not find any clear abuse of discretion here by the district court. I would have affirmed.